IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DORIAN DAWODU,** | * | |
| **Plaintiff,** | * | |
| v. | * | Civ. No. DLB-25-3664 |
| **MCM PRODUCTS USA, INC.,** | * | |
| **Defendant.** | * | |

## MEMORANDUM & ORDER

Dorian Dawodu has sued her former employer MCM Products USA, Inc. ("MCM") for employment discrimination. MCM moved to compel arbitration. For the following reasons, the motion to compel arbitration is granted.

**I.    Background**

Dawodu is an African American woman. ECF 1, ¶ 3. MCM, a retail brand company, hired Dawodu as an account executive in January 2016. *Id.* ¶¶ 4, 5.

Dawodu was promoted several times over the years and, by November 2022, held the title of Senior Director of Wholesale. *Id.* ¶ 5. Dawodu claims that, although she received favorable performance reviews, MCM "imposed a 'glass ceiling' on her advancement" by failing to consider her for the Vice President of Wholesale position and, instead, selecting a white woman to fill the position on two separate occasions. *Id.* ¶¶ 6–11. Dawodu also alleges that she faced "discrimination in the terms and conditions of her employment" because MCM managers subjected her to "a series of microaggressions," as well as "discriminatory and demeaning conduct." *Id.* ¶¶ 12, 13. For instance, Dawodu claims she was permitted to work remotely for five years but was abruptly

removed from the telework schedule in February 2025, while "individuals outside her protected class were permitted to continue teleworking or working flexible schedules." *Id.* ¶ 14.

In September 2025, Dawodu was notified that her position would be eliminated and that she would be terminated, although there was "no apparent reason" to terminate her. *Id.* ¶¶ 16, 20. Dawodu alleges that, had she been "appropriately promoted" to the Vice President of Wholesale role "instead of discriminatorily overlooked," she "would not have been eliminated based on MCM's ostensible reasoning for the layoff." *Id.* ¶ 17.

Dawodu filed suit in this Court against MCM, asserting a discrimination claim under 42 U.S.C. § 1981. *See id.* ¶¶ 21–24. She asks the Court to: (1) declare that MCM violated her rights; (2) issue an injunction ordering MCM to refrain from further discrimination; (3) instate Dawodu as Vice President of Wholesale or an equivalent role; and (4) order payment of back and front pay, as well as compensatory and punitive damages. *Id.* at 6–7.

MCM filed a motion to compel arbitration. ECF 13. According to MCM, in August 2023, MCM emailed its current employees, including Dawodu, to inform them about updates to MCM's arbitration agreement. ECF 16-1 (Decl. of Karina Seelochan, MCM Director of Human Resources), ¶ 7. The agreement stated that, as a "condition of [their] employment with MCM," employees "agree[d] to the following provisions," which included a binding arbitration clause. *Id.* at 11, 15. That clause provided that MCM employees "agree that any and all controversies . . . arising out of, relating to, or resulting from [their] employment with the company or the termination [thereof] . . . shall be subject to binding arbitration[.]" *Id.* at 15. MCM directed employees to download the agreement and sign an acknowledgment that they had read it. *Id.* ¶ 9. Dawodu signed the acknowledgment. *Id.* at 10. MCM now seeks to compel Dawodu to arbitrate

the employment discrimination claims she asserts in this suit. The motion is fully briefed. ECF 13-1, 15, 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## II.     Standard of Review

MCM seeks judicial enforcement of an arbitration agreement pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. A party to an arbitration agreement may ask the Court "to move . . . an arbitrable dispute out of court and into arbitration" by either staying the litigation or compelling arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (citing 9 U.S.C. §§ 3–4). Additionally, in this circuit, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Whatever the remedy, the Court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). Accordingly, the Court engages "in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (stating a motion to compel arbitration "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues").

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477–78 (D. Md. 2012). When the validity of an arbitration agreement is in dispute, as here, "[m]otions

3

to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011); *see Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 233 (4th Cir. 2019) ("To decide whether 'sufficient facts' support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test."). "In applying that standard, the court is entitled to consider materials other than the complaint and its supporting documents." *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 233. The defendant, as the moving party, bears the burden of establishing it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

### III.   Discussion

To prevail on a motion to compel arbitration, a party must show

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation[.]" *Levin v. Alms & Assocs.*, 634 F.3d 260, 266 (4th Cir. 2011). "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). Still, the "FAA's policy of

---

[1] This Court has reviewed motions to dismiss and compel arbitration under Federal Rule of Civil Procedure 12(b)(3). *See Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548–49 (D. Md. 2019). Under that standard, too, the Court views "the facts in the light most favorable to the plaintiff" and may "freely consider evidence outside the pleadings." *Id.* at 549 (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012), and *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)).

favoring arbitration augments ordinary rules of contract interpretation[] and requires all ambiguities to be resolved in favor of arbitration." *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 682–83 (4th Cir. 2020) (internal quotation marks and citations omitted).

Dawodu does not challenge the existence of a dispute between the parties, the relationship of her employment to interstate commerce, or her refusal to arbitrate the dispute. In fact, she concedes that "arbitration would be appropriate had [she] executed or indicated assent to the terms and conditions of the Agreement." ECF 15, ¶ 3.

Dawodu's sole argument against enforcement of the arbitration agreement is that she did not assent to it. Although she admits to signing an acknowledgment that she read the agreement, Dawodu argues this acknowledgment "is not tantamount to a signature reflecting [her] assent to the terms and conditions" of the arbitration agreement itself. *Id.* ¶¶ 1–2.

The U.S. Court of Appeals for the Fourth Circuit recently considered and rejected a similar argument in *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146 (4th Cir. 2025). There, the video-streaming platform CuriosityStream moved to compel arbitration after two of its users filed a putative class action asserting its use of their data violated state and federal privacy laws. *Id.* at 149. When these users registered for CuriosityStream's service, they were directed to a sign-up page with text notifying them that, "[b]y subscribing to CuriosityStream, you agree that you've read our Terms of Use." *Id.* at 150. If a user clicked on the hyperlinked words "Terms of Use," they were directed to the platform's terms of use, which contained an arbitration provision. *Id.* A user then would have seen language identifying actions that "constitute[d] agree[ment] to" the terms of use, one of which was "registering with" the website, which the users did. *Id.* at 153–54. The users argued that indicating they had read the terms of use was not the same as assenting to them. The Fourth Circuit agreed with the "obviously correct proposition" that "agreeing that you

have read something is different from saying you agree with what you have read." *Id.* at 154. But the court disagreed with the users that the inquiry stopped there. *Id.* The court reasoned that the terms of use page specified "two *actions*" beyond "merely reading its terms" that would "signify assent," and one of those actions was registering with the website. *Id.* Thus, it was not reading the terms of use that manifested assent. Rather, the conduct that signified assent was registering with the website after being on notice that doing so "constitute[d] agree[ment] to" the terms of use. *Id.* The court held that, because the users had registered with the website, they had assented to its terms of use, which included the arbitration provision. *Id.*

*Dhruva* applies here. Several years into Dawodu's employment, MCM sent an email informing her about MCM's updated arbitration agreement and directing her to download the agreement and sign the acknowledgment. ECF 16-1, ¶¶ 7–9 (Decl. of Karina Seelochan, MCM Director of Human Resources). The agreement stated, at the top of the first page:

> As a condition of my employment with MCM Products USA, INC, and any of its subsidiaries or affiliated companies (the "Company"), and in consideration of my employment with the Company and my receipt of the compensation paid to me by the Company now and in the future, I agree to the following provisions of this At Will Employment, Confidential Information, Invention Assignment & Arbitration Agreement (this "Agreement")[.]

*Id.* at 11. Dawodu signed the acknowledgment that she had read the arbitration agreement. *Id.* at 10. Although Dawodu did not sign the arbitration agreement itself, she continued to work for MCM for two more years. *See* ECF 1, ¶ 16. That conduct—continuing her employment after acknowledging she read the agreement, whose terms stated that agreeing to them was a condition of employment—evidenced her assent to the terms of the arbitration agreement. Under Maryland law, "employer policy directives regarding aspects of the employment relation[ship]" may "become contractual obligations when, with knowledge of their existence, employees start or continue to work for the employer." *Dahl v. Brunswick*, 356 A.2d 221, 224 (Md. 1976) (finding

6

employees who were aware of employer's severance policy manifested their assent to it by continuing employment); *see also Staggs v. Blue Cross of Md., Inc.*, 486 A.2d 798, 803 (Md. 1985) (agreeing with *Dahl*). This principle of Maryland contract law applies to employment arbitration agreements as well. *See, e.g.*, *Rakowski v. Best Buy Stores, L.P.*, No. ELH-20-1107, 2020 WL 6485085, at *10 (D. Md. Nov. 3, 2020) (holding, under Maryland law, that employee assented to arbitration agreement by continuing their employment after having read the agreement); *see also Miranda Sorto v. Carrols LLC*, No. DKC 23-2263, 2024 WL 2783906, at *5 (D. Md. May 30, 2024) ("[C]ourts have held that when an employment contract is conditioned upon the employee's acceptance of an arbitration agreement, continued employment can constitute assent even when the employee did not sign the arbitration agreement."). Just like the users of the online streaming service in *Dhruva* assented to the terms of an arbitration agreement by registering on the website, Dawodu assented to the terms of the arbitration agreement by continuing to work for MCM after receiving notice that her agreement to follow the terms of the arbitration agreement was a condition of her employment. Because Dawodu assented to the terms of the arbitration agreement, a valid arbitration agreement exists.

Having found a valid arbitration agreement exists, the Court easily concludes that "the issues in [this] case fall within [the agreement's] purview." *See Adkins*, 303 F.3d at 500. The arbitration agreement provides that MCM employees "agree that any and all controversies . . . arising out of, relating to, or resulting from [their] employment with the company or the termination [thereof] . . . shall be subject to binding arbitration[.]" ECF 16-1, at 15. Dawodu's employment discrimination case against MCM plainly is a controversy arising out of, relating to,

and resulting from the termination of her employment. Her claims are subject to binding arbitration.

For these reasons, MCM's motion to compel arbitration is granted. The case is dismissed without prejudice.[2]

Accordingly, it is, this 6th day of February, 2026, hereby ORDERED:

1. MCM's motion to compel arbitration, ECF 13, is GRANTED;

2. The case is DISMISSED without prejudice; and

3. The Clerk SHALL CLOSE this case.

Date: February 6, 2026

Deborah L. Boardman
United States District Judge

---

[2] In *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024), the Supreme Court held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." Dawodu did not ask this Court to stay the case pending arbitration. *See* ECF 15, at 2 (requesting only that the Court deny MCM's motion to compel arbitration). Thus, the Court may dismiss the case without prejudice. *See Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 244 (4th Cir. 2025) (noting that *Smith* "says nothing about what happens when the [ ] party never requests a stay" and that, "under such circumstances," dismissal is not improper).